```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

UNITED STATES OF AMERICA      :
                              :
       v.                     :      Case No. 2:01-cr-12
                              :
DONALD FELL,                  :
                              :
       Defendant-Movant.      :

**Memorandum Opinion and Order: Claim XXII: Juror Misconduct**

Donald Fell has moved under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence of death, to vacate and set aside his judgment of conviction and to grant him a new trial. The Government has opposed the motion, and requested summary dismissal of Fell's claims. Following review of the § 2255 motion and the request for discovery, the Court declines to order summary dismissal of Claim XXII,[1] and sets forth a procedure and schedule for further proceedings as detailed below.

**I.  Background**

In its Memorandum Opinion and Order addressing the remainder of Fell's § 2255 claims, the Court described the background and procedural history of this case, familiarity with which is presumed. Only those facts necessary to the resolution of the request for summary dismissal of Claim XXII are set forth below.

Jury selection in this capital case began on May 4, 2005, with individual voir dire. Prior to voir dire, prospective jurors filled out a detailed questionnaire. The parties had

---

[1] The remainder of Fell's claims are addressed in a separate opinion.

submitted a joint proposed juror questionnaire to the Court, and the Court revised the questionnaire. In the questionnaire, each of the prospective jurors were asked, among other things, "Have you or has a family member or close friend ever been a witness to or the victim of a crime?" They were also asked, "Have you or has a family member or close friend ever been charged with a crime?"

In a videotaped address to the prospective jurors, the Court, among other things, explained to the prospective jurors:

> If you cannot answer a question because you do not understand it, write "Do not understand" in the margin next to the question. If you cannot answer the question because you do not know write "Do not know." If you want to explain your answer, do so either in the space provided on the questionnaire, or on one of the sheets appended to the questionnaire. . . . If for any reason you do not wish to answer any particular question, please write the word "Private" in the margin next to the question and we will take this matter up with you privately, if necessary.
>
> Because your answers are part of the jury selection process and become part of the record of this court, the answers must be truthful under the penalty of perjury, and you must sign the questionnaire at the end.

Tr. Videotaped Jury Instructions 13, Fell Ex. 117.

Individual voir dire was conducted over fifteen days between May 4 and June 6, and a jury was selected on June 9, 2005. From their first contact with the Court, prospective jurors and those who were seated for Fell's trial were repeatedly advised and reminded that their verdict must be based "on the evidence

presented in the courtroom and not on anything that [they] may have heard or read or experienced outside the courtroom." *See, e.g., id.* at 5. They were repeatedly advised and reminded not to discuss the case with others or among themselves. *See, e.g., id.* at 12. At the beginning of each day of trial the seated jurors were asked if they had spoken to anyone about the case, or learned anything about the case from outside the courtroom. *See, e.g.*, Trial Tr. vol. 1-1, 10, June 20, 2005. At the end of each day of trial the Court reminded the jurors not to discuss the case with anyone or to be exposed to publicity or learn anything about the case from outside the courtroom. *See, e.g.*, Trial Tr. vol. 1-2, 89, June 20, 2005. At one point the Court also specifically advised the jurors not to conduct their own investigation. Trial Tr. vol. 6, 61, June 29, 2005.

Fell makes three categories of claims that he was deprived of his constitutional rights to an impartial jury. First, he claims that two of the jurors in his case did not answer the questionnaire completely and truthfully, and that had they done so they would have been stricken for cause. Second, he claims that the jurors were exposed to extraneous influences. Third, he claims that a juror coerced another into changing her vote.

The government argues that all of Fell's juror claims, raised for the first time in this motion, are procedurally defaulted. In general, "claims not raised on direct appeal may

3

not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). The purpose of the rule is to "conserve judicial resources and to respect the law's important interest in the finality of judgments." *Id.* Like ineffective assistance of counsel claims, however, juror misconduct claims may be poorly suited to resolution on direct appeal. Evidence of juror misconduct may not appear in the trial record. *Cf. id.* at 504-05 (discussing ineffective assistance claim). A district court–in particular the one that presided over voir dire, jury selection, trial and verdict–has the opportunity to develop a record and to weigh the facts relevant to determining whether a defendant has been deprived of his right to a fair and impartial jury. *Cf. id.* at 505-06. Accordingly, where, as here, the trial record did not disclose grounds for raising the jury issues on appeal, and the jury claims could not be presented without additional factual development, the procedural default rule will not apply to bar the claims. *See Waley v. Johnston*, 316 U.S. 101, 104 (1942) (per curiam) (holding that an issue was appropriately raised by habeas corpus petition where "[t]he facts relied on are dehors the record and their effect on the judgment was not open to consideration and review on appeal"); *Bousley v. United States*, 523 U.S. 614, 621-22 (1998) (distinguishing a *Waley* claim from one that can be fully addressed on direct review based on the

4

record); *see also Ida v. United States*, 191 F. Supp. 2d 426, 436 (S.D.N.Y. 2002) (holding that a juror misconduct issue was properly raised in a § 2255 motion).

**II. Discussion**

    **A.    Juror Non-Disclosure or Misstatements**

"One touchstone of a fair trial is an impartial trier of fact–'a jury capable and willing to decide the case solely on the evidence before it.'" *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)); *accord United States v. Stewart*, 433 F.3d 273, 303 (2d Cir. 2006). "Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors. . . . The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious." *McDonough*, 464 U.S. at 554.

In *McDonough Power Equipment*, the United States Supreme Court held that a party seeking a new trial based on juror nondisclosure or misstatements must satisfy a two-part test. "[A] party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* at 556. "Challenges for cause are generally based on actual bias, implied bias, or inferable bias." *United States v. Greer*, 285 F.3d 158, 171 (2d Cir. 2002). Actual

5

bias is bias in fact.  *Id.*  Implied bias is bias presumed as a matter of law.  *Id.*  And "'[b]ias may be inferred when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias.'"  *Id.* (quoting *United States v. Torres*, 128 F.3d 38, 47 (2d Cir. 1997)).  The *McDonough* rule applies to criminal trials.  *See, e.g.*, *Stewart*, 433 F.3d at 303; *Greer*, 285 F.3d at 170.

### 1. Juror 162

Juror 162 answered "No" to the question "Have you or has a family member or close friend ever been a witness to or the victim of a crime?"  In fact, the juror had been the victim of repeated sexual abuse as a child.  In a written statement the juror disclosed:  "At trial, we learned that Donald Fell was abused as a child and that his parents were alcoholics.  I was sexually abused by my stepfather for years and it didn't turn me into a murderer."  Fell Ex. 280, ¶ 7 (filed under seal).  Fell argues that the failure of the juror to disclose the molestation, on the questionnaire or *in camera*, prejudiced him and requires a new trial.  As Fell explains, the fact that Fell had been sexually and physically abused as a child was presented as a mitigating factor in the penalty phase of the trial.  His defense team considered it important that prospective jurors be asked

6

whether they would be able to consider evidence of childhood sexual abuse as a mitigating factor.

The government argues first that Rule 606(b) of the Federal Rules of Evidence prohibits use of the juror's statement. Rule 606(b) provides that

> During an inquiry into the validity of a verdict . . ., a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict . . . . The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Fed. R. Evid. 606(b).

At the outset, the Court notes that as a federal rule of evidence, Rule 606(b) does not apply to death penalty-phase proceedings under the Federal Death Penalty Act. *See Jones v. United States*, 527 U.S. 373, 412 (1999); *United States v. Fell*, 360 F.3d 135, 145 (2d Cir. 2004). However, the Supreme Court in *Jones* cited with approval the Fifth Circuit Court of Appeals' assessment that "'[t]he reasons for not allowing jurors to undermine verdicts in [trial proceedings] . . . apply with equal force to sentencing hearings.'" *Jones*, 527 U.S. at 412 (quoting *United States v. Jones*, 132 F.3d 232, 246 (5th Cir. 1998)) (alterations in original).

The portion of the juror's statement quoted above does not implicate Rule 606(b), or the need to safeguard the secrecy of jury deliberations. At issue is whether the juror failed to

7

answer the questionnaire honestly, prior to being selected for the jury. The statement provides evidence to support Fell's contention that the juror failed to do so.[2]

The government also argues that there is no reason to suspect that the juror's response was deliberately false. Given the age of the juror at the time the questionnaire was completed, the sexual abuse occurred decades earlier. The government posits that the juror may not have understood the question to require disclosure of the sexual abuse, or that the juror did not recognize it as a crime, or recognize herself as a victim. Therefore Fell cannot establish the first *McDonough* element, failure to answer honestly. Furthermore, the government argues that should this nondisclosure constitute a material failure to answer honestly, Fell cannot show that an honest answer would have provided a valid basis for a challenge for cause. *See McDonough*, 464 U.S. at 556.

Whether Fell's *McDonough* claim can succeed is not the issue. The issue is whether he has alleged a plausible non-frivolous claim that the juror failed to answer honestly a material question on voir dire, and that the juror would have been challenged for cause had the juror answered honestly. The juror's statement, "it didn't turn me into a murderer," suggests

---

[2] Portions of the juror's affidavit arguably reveal the effect of this victimization on the juror's vote, or provide insight into the juror's mental processes concerning the verdict. Any such matter is entirely disregarded.

that this juror might not have been able to fairly and impartially consider evidence of childhood sexual abuse as a mitigating factor in a capital trial. Trial counsel were deprived of the opportunity to determine whether this juror could have been challenged for cause, because the juror withheld the information that would have prompted the inquiry.

To avoid summary dismissal, Fell must have alleged a plausible non-frivolous claim. Fell has provided substantial evidence that the juror's questionnaire response was untrue. If it is not clear whether the false response affected the juror's impartiality, the appropriate course is to conduct an evidentiary hearing. *Stewart*, 433 F.3d at 306 ("[I]f any significant doubt as to a juror's impartiality remains in the wake of objective evidence of false voir dire responses, an evidentiary hearing generally should be held. . . . Such a hearing is often the most reliable way for discerning the true motivations behind a juror's false replies.").

### 2. Juror 26

When asked the question, "Have you or has a family member or close friend ever been charged with a crime," Juror 26 answered "No." In fact Juror 26 was convicted in April 1996 of unlawful mischief, a misdemeanor, for which he received a fine of $100. In January 1995 he was convicted in New Hampshire for driving

9

under the influence.[3]  Fell alleges that the criminal mischief conviction arose out of a marital dispute.

Fell also claims that Juror 26 misrepresented his knowledge of Fell's case.  During individual voir dire the following exchange took place:

```
COURT:          Have you heard anything about this case?
JUROR NO. 26:   No, not really. No.
COURT:          Do you know any of the facts at all?
JUROR NO. 26:   No.  I think at one point, a long time
                ago, I heard something in passing, but
                other than that, no.
COURT:          Do you remember what you heard?
JUROR NO. 26:   That just that a woman had been
                kidnapped, and that was the only thing
                that I, I can recall.
```
Individual Voir Dire Tr. 90:7-17, May 13, 2005.

In an interview on January 15, 2011, the juror admitted to post-conviction counsel to knowing the circumstances of Fell's codefendant Robert Lee's death from a television news report that aired around the time of his death in September 2001.  From this information Fell infers that the juror had learned much more about the case than his answer to the Court implied.

The government argues that non-disclosure of two misdemeanor offenses committed nearly a decade prior to trial, and the failure to mention knowledge of Lee's death, do not permit an inference that the juror deliberately failed to disclose the information.  The government suggests that it is possible that

---

[3]  In his reply brief, Fell alludes to a third "set of charges": "unlawful insurance payment and failure to report payment" brought in 1991.  There is no indication whether this is a criminal offense.

the juror did not remember or did not consider the information responsive to the questions. Although it is certainly possible that the juror did not make deliberate misrepresentations, and it may well be that Fell will ultimately be unable to prevail on the first part of the *McDonough* test, this Court cannot summarily dismiss a claim that is facially valid. *See Pham v. United States*, 317 F.3d 178, 184-85 (2d Cir. 2003); *accord Matthews v. United States*, 682 F.3d 180, 188 (2d Cir. 2012) (vacating order that adopted the government's arguments and summarily rejected ineffective assistance of counsel claim).

Similarly, the government argues that had the juror disclosed the information he would not have been eligible for a challenge for cause. Certainly, on the current record, the juror's responses during individual voir dire reflect his willingness to consider the facts presented and to follow the court's instructions. The parties, however, did not have the information that might have prompted further inquiry into areas of possible bias. Fell argues that trial counsel would have had the basis to inquire into the juror's ability to objectively evaluate evidence of domestic turmoil and alcohol abuse, about which they planned to present mitigation evidence. He also argues that trial counsel would have challenged for cause any juror who had been exposed to pretrial publicity about Lee's

11

death, information that was excluded from trial.[4]

The request for summary dismissal of the claims involving Juror 26 is denied.[5]

**B.     Extraneous Influences**

"[T]he law presumes prejudice from a jury's exposure to extra-record information." *United States v. Farhane*, 634 F.3d 127, 168 (2d Cir. 2011) (citing *Remmer v. United States*, 347 U.S. 227, 229 (1954)); *accord Greer*, 285 F.3d at 173.  The burden rests upon the government to show that the information is harmless.  *Id.*  "'Where an extraneous influence is shown, the court must apply an objective test, assessing for itself the likelihood that the influence would affect a typical juror.'" *Id.* (quoting *Bibbins v. Dalsheim*, 21 F.3d 13, 17 (2d Cir. 1994) (per curiam)); *see also Farhane*, 634 F.3d at 169 (stating that the inquiry "focuses on . . . the nature of the information or contact at issue, and its probable effect on a hypothetical average jury").  Although "[t]he court may not inquire into 'the degree upon which the extra-record information was used in

---

[4]  Another prospective juror was excused in part because he knew about Lee's death.  This Court stated then:
>    Second, he has got some information about this case which no one else has, and that is that Mr. Lee committed suicide.  And if he is allowed to sit on a jury, that means the entire jury gets to know that Mr. Lee committed suicide.  And that is of grave concern to me, in terms of fairness to this defendant, as well as the government, for that matter . . . .

Individual Voir Dire Tr. 177:12-20, May 4, 2005.

[5]  Fell also claims that Juror 26's undisclosed knowledge of Lee's death introduced extraneous information into the jury deliberations.  That claim also survives summary dismissal, as discussed below.

12

deliberations and the impression which jurors actually had about it,'" *Greer*, 285 F.3d at 173 (quoting *United States v. Calbas*, 821 F.2d 887, 897 (2d Cir. 1987)), it "'may appropriately consider the circumstances surrounding the introduction of [the] information in making [its] determination.'" *Id.* (quoting *Calbas*, 821 F.2d at 896 n.9) (alteration in original).

### 1. Juror 143

Juror 143 revealed in a December 2010 interview with § 2255 counsel that he had driven to Rutland during the trial and checked out the house where the murders of Debra Fell and Charles Conway occurred and the grocery store where Teresca King was abducted:

> We discussed the evidence, like the rock, the shotgun, the photos of Mrs. King, and the trip to Rutland during the trial when I looked at the mother's house on Robbins Street and the Price Chopper. The mother's neighborhood wasn't great, but it was okay. The house was decent. She was just trying to live her life. I told them about the Stewart's dumpster next to Price Chopper where I think Fell threw the knife into the dumpster in the parking lot. . . . The lighting at the Price Chopper in Rutland was weak. At the time I worked at the Price Chopper in Barre-Berlin and the parking lot was also unsafe because it was poorly lit. It isn't expensive to get better lighting. They should do that.

Fell Ex. 241 ¶ 5. Fell argues that the juror introduced three elements of extraneous evidence into the jury's deliberations: his observations of the lighting at the grocery store; his observations of the Debra Fell residence and neighborhood; and his observations of the route between the Fell residence and the

13

grocery store.  According to his statement, the juror shared these observations with his fellow jurors.

The government acknowledges that the jury received extraneous information, but argues that this extra-record information was cumulative.  The government introduced multiple photographs of both locations, including aerial photographs that showed the Debra Fell residence and the Price Chopper.  It contends that the nature of the neighborhood and the appearance of the parking lot was evident from the photographs, and that the information was relatively insignificant.

Fell by contrast argues that the juror was able to observe far more than the photographs depicted.  He asserts that the parking lot lighting and the route taken related to evidence of Fell's intent and the credibility of the assertion that he was impaired at the time.  He contends that observations of the Debra Fell residence and neighborhood as not great but okay tended to undercut the defense depiction of Debra Fell's extreme neglect and abuse of her son.

### 2.  **Juror 26**

In an interview with 2255 counsel Juror 26 admitted to having learned about the death of Robert Lee from a television news report "that had aired around the time of his death (years before the trial and juror voir dire)."  Fell Mot. 330.  Juror 26 was under the impression that Lee had hanged himself.  Fell

claims that this exposure to news of Lee's death was prejudicial in several ways, not the least of which was the fact that the Court granted Fell's motion to exclude any evidence relating to Lee's death.  *See* Op. & Order 8, May 25, 2005, ECF No. 131.  The only reference made to Lee's death came on the last day of the penalty phase of trial, when the government read a stipulation into the record:

> It is stipulated and agreed by and between the undersigned parties that on February 1st, Robert Lee and Donald Fell were charged by grand jury indictment with the same crimes.  On September 20, 2001, Lee died in his cell at the northwest Correctional Facility in St. Albans, Vermont.  His death was determined to be accidental.  At the time of his death, Lee faced the same charges as Fell.

Trial Tr. vol. 11, 93:11-19, July 12, 2005.

The government suggests that a typical juror would not consider information derived from a news report some years before trial and disregard a stipulation introduced by the parties at trial, and that there is no reason to think that Juror 26 did not follow the court's instruction to render a decision based solely on the evidence heard at trial.

In both of these instances, it may well be that the government can overcome the presumption of prejudice from the jury's exposure to extra-record information.  This Court must assess the likelihood that the information would affect a typical juror, viewing the entire record, and taking into consideration the circumstances surrounding the exposure to the information.

15

Summary dismissal of the claims is therefore inappropriate.

**C.  Juror Coercion**

Fell presents a further claim regarding Juror 143.  Fell states that during the December 2010 interview with § 2255 counsel, the juror volunteered the information that

> A female juror pointed out the fact that Fell's shotgun was not loaded.  The marshal then bought [sic] in the gun.  We showed the jury that it was unloaded.  I also made sure that the gun was unloaded. . . .  I cocked and pointed it a [sic] her and she squirmed.  I said, "That's what they did, you were scared even though you knew it wasn't loaded."

Fell Ex. 241 ¶ 8.  Fell believes that this demonstration persuaded the juror to change her vote to death during the penalty-phase deliberations.

The government contends that the claim of juror intimidation or coercion is speculative, and that in any event juror testimony is inadmissible about statements or incidents that occurred during deliberations or their effect on a juror's vote, or about any juror's mental processes concerning the verdict, citing Federal Rule of Evidence 606(b).

"[Q]uestions of jury coercion 'strike[] at the root of the right to a trial by jury.  No person may lawfully be convicted by a jury unless every juror actually agrees that upon the evidence and the law of the case that person is guilty.'"  *Anderson v. Miller*, 346 F.3d 315, 326 (2d Cir. 2003) (quoting *United States v. Pleva*, 66 F.2d 529, 532 (2d Cir. 1933)).  Yet, as the Second

16

Circuit has also observed,

> Courts face a delicate and complex task whenever they undertake to investigate reports of juror misconduct or bias during the course of a trial. This undertaking is particularly sensitive where, as here, the court endeavors to investigate allegations of juror misconduct during deliberations. As a general rule, no one-including the judge presiding at a trial-has a "right to know" how a jury, or any individual juror, has deliberated or how a decision was reached by a jury or juror. The secrecy of deliberations is the cornerstone of the modern Anglo-American jury system.

*United States v. Thomas*, 116 F.3d 606, 618 (2d Cir. 1997); *see also United States v. Reid*, 53 U.S. 361, 366 (1851) ("Unquestionably [affidavits of jurors impeaching their verdict] ought always to be received with great caution. But cases might arise in which it would be impossible to refuse them without violating the plainest principles of justice."), *overruled in part on other grounds by Rosen v. United States*, 245 U.S. 467, 469-70 (1918).

Thus there is a long-recognized "distinction between what may and what may not be established by the testimony of jurors to set aside a verdict." *Mattox v. United States*, 146 U.S. 140, 148 (1892). The *Mattox* Court distinguished between matters "'resting in the personal consciousness of one juror'" and "'overt acts [which] are accessible to the knowledge of all the jurors.'" *Id.* (quoting *Perry v. Bailey*, 12 Kan. 539, 545 (1874)). A juror may not testify "as to the motives and influences which affected [the] deliberations," but "may testify to any facts bearing upon

17

the question of the existence of any extraneous influence." *Id.* at 149 (quoting *Woodward v. Leavitt*, 107 Mass. 453, 466 (1871)); *accord Stewart*, 433 F.3d at 307 ("Fed. R. Evid. 606(b) precludes a juror from testifying about deliberations and jurors' mental processes in the course thereof, but allows testimony regarding extraneous prejudicial information that came to the jury's attention."); *United States v. Moten*, 582 F.2d 654, 665 (2d Cir. 1978) ("[T]he rule admits testimony concerning whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." (citing *Mattox*, 146 U.S. at 148-49) (internal quotation marks omitted)).

The *Mattox* Court stressed: "It is vital in capital cases that the jury should pass upon the case free from external causes tending to disturb the exercise of deliberate and unbiased judgment. Nor can any ground of suspicion that the administration of justice has been interfered with be tolerated." *Id*. And this Circuit has found it "far from unreasonable to conclude that credible allegations of threats of violence" between or among jurors constitutes an exception to Rule 606(b). *Anderson*, 346 F.3d at 327.

Whether this event occurred, whether it constituted a threat, whether a typical juror would regard it as a threat, or whether the demonstration constituted extra-record information

18

that would likely have affected the decision of a typical juror cannot be determined without further development of the facts. The issue is inappropriate for summary dismissal.

**III. Conclusion**

Summary dismissal of Claim XXII is not warranted. Fell's motion has demonstrated reasonable grounds for further investigation. The Court will conduct a limited inquiry of jurors 26, 143 and 162 in August 2013, at which counsel for Fell and the government may be present. The inquiry will focus narrowly on whether jurors 162 or 26 made material misstatements in voir dire, whether jurors 26 or 143 obtained or communicated extra-record information, and whether juror 143 made a threat during deliberations. Within thirty days of the date of this decision the parties shall submit proposed procedures for the conduct of this inquiry, consistent with its narrow purpose, the need to safeguard the privacy of jurors and the deliberative process, and Fell's Fifth and Sixth Amendment rights to a fair trial by an impartial jury based on the evidence presented in court.

Dated at Burlington, Vermont, this 10th day of May, 2013.

/s/ William K. Sessions III
William K. Sessions III
District Judge